UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DARRELL CHAPMAN,

                                        Petitioner,

   v.

                                                        9:03-CV-171 (LEK/GJD)

THOMAS RICKS, Superintendent,

                                        Respondent.


DARRELL CHAPMAN, pro se

ASHLYN H. DANNELLY, Assistant Attorney General
Attorney for Respondent

GUSTAVE J. DIBIANCO, U.S. Magistrate Judge

**REPORT-RECOMMENDATION**

       This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

       Petitioner brings this action for writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging a judgment of conviction rendered on November 5, 1997 in the

Albany County Court.  Petitioner pleaded guilty on September 3, 1997 to Robbery in the

First Degree and was sentenced, pursuant to the plea negotiations, to an indeterminate

term of eleven to twenty-two years in prison.  Petitioner now seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) his guilty plea was based

upon misinformation and therefore was not knowing, voluntary or intelligent (Ground

Two); (2) his plea is invalid because there was no factual basis to support a conviction

for first degree robbery (Ground Three); and (3) appellate counsel was ineffective for

not raising these claims on direct appeal (Ground One)(Dkt. No. 19, Amend. Pet.).[1]

Respondent has filed his answer to the petition, together with a memorandum of law

and the additional pertinent state court records. (Dkt. Nos. 31 and 32). This Court

agrees with respondent and will recommend denial of the petition.

## DISCUSSION

### 1.   State Court Proceedings

On April 22, 1997, an Albany County Grand Jury returned indictments charging

Petitioner and his co-defendants, Dantie Mitchell and Reggie Richardson, with several

crimes. Petitioner was charged with Robbery in the First Degree (N.Y. PENAL LAW

§160.15(4)), Attempted Robbery in the First Degree (N.Y. PENAL LAW

§110.00/160.15(4))(two counts), Criminal Possession of a Weapon in the Second

Degree (N.Y. PENAL LAW §265.03)(two counts), and Criminal Possession of Stolen

Property in the Fifth Degree (N.Y. PENAL LAW §165.40)(Dkt. No. 31, Exh. A at A-1-A-

9).

On September 3, 1997, Petitioner entered into a negotiated plea agreement.

Under its terms, Petitioner pleaded guilty to one count of first degree robbery in

satisfaction of the indictment and a separate forgery indictment relating to a fingerprint

card, in exchange for a promised indeterminate sentence of eleven to twenty-two years

in prison. (Plea Tr., 9/3/97, at 16-17). As a condition of the plea, Petitioner was

required to give truthful testimony at co-defendant Mitchell's trial. (*Id*. at 17).

On November 5, 1997, Petitioner appeared for sentencing. The prosecutor

---

[1]     Petitioner's claims will be considered out of order for the sake of clarity.

confirmed that Petitioner had abided by the terms of the negotiated plea agreement by testifying truthfully against Mitchell. (Sent. Tr. at 3). The court, having presided over Mitchell's trial, agreed. (*Id*.). Defense counsel then informed the court that Petitioner wanted to modify his plea from first degree robbery to second degree robbery based upon his claim that the gun used in the robbery was a pellet gun and was not an operable firearm. (*Id*. at 4-6, 10). Petitioner told the court that he pleaded guilty because he had no knowledge of the law, was young and inexperienced, and relied upon his attorney to correctly advise him. (*Id*. at 7-8, 16). Petitioner acknowledged that he testified at Mitchell's trial and admitted he committed one robbery and two attempted robberies. He also indicated that he understood he pleaded guilty to one robbery charge in satisfaction of all three robberies, a weapons charge, and an unrelated forgery. (*Id*. at 8-9, 18-19).

The court stated that Petitioner's claim that the gun was not an operable firearm was not a basis to modify the plea, but was, rather, an affirmative defense Petitioner would have to prove at trial. (*Id*. at 10-13). The court pointed out that the charge to which Petitioner pleaded guilty required only that he display what appeared to be a handgun. Petitioner acknowledged he had engaged in that conduct, but insisted that since the gun was not operable, he was not guilty of first degree robbery. (*Id*. at 14-15). The court denied Petitioner's motion to modify his plea.

Petitioner then insisted that he was under the influence of drugs and alcohol at the time of the plea. (*Id*. at 18-21). Although Petitioner was in continuous custody prior to his plea, he claimed that he smoked marijuana and consumed an alcoholic drink

3

made from fruit juice. He could not remember where he ingested either substance, or who gave the substances to him. (*Id*. at 20-21). When the court rejected this claim, Petitioner then stated that he was forced to sign his statements to police, and that the police kidnapped him by taking him from one police station to another. (*Id*. at 23-25). Finally, Petitioner claimed that he lied during his plea colloquy, that he and Mitchell committed none of the charged crimes, and that he only claimed he had committed them because the prosecutor guaranteed him help. (*Id*. at 25-26). The court was unconvinced. The judge denied Petitioner's motion to modify the plea, and agreed to sentence Petitioner to the negotiated sentence even though it found that Petitioner "absolutely and utterly lied in this court this morning." (*Id*. at 27-28).

Petitioner appealed his conviction, alleging that the sentence imposed was harsh and excessive. (Dkt. No. 31, Ex. A). On June 8, 2000, the Appellate Division, Third Department affirmed the conviction and sentence. *People v. Chapman*, 273 A.D.2d 495, 709 N.Y.S.2d 457 (3d Dept. 2000); (Dkt. No. 31, Ex. C). The Appellate Division found that Petitioner's claim was unpreserved because Petitioner had waived his right to appeal. It further found that, had the claim been preserved, no extraordinary circumstances existed that would warrant modifying the sentence in the interest of justice. Leave to appeal to the New York Court of Appeals was denied on October 26, 2000. *People v. Chapman,* 95 N.Y.2d 904, 739 N.E.2d 1150, 716 N.Y.S.2d 645 (2000); (Dkt. No. 31, Ex. D).

On February 26, 2001, Petitioner filed a *pro se* motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") 440.10. (Dkt. No. 31, Ex. E). In

4

his motion, Petitioner claimed that his guilty plea was not knowingly entered because the plea allocution was factually insufficient.  Specifically, Petitioner argued that he was not informed that if the weapon used in the robbery was not operable, he had an affirmative defense to first degree robbery.   Petitioner also argued that new counsel should have been appointed at sentencing because trial counsel told the court he attempted to dissuade Petitioner from moving to withdraw or modify his plea, thereby becoming a witness against him.  The prosecutor filed an Affidavit in Opposition to Petitioner's motion on May 10, 2001. (Dkt. No. 31, Ex. F).  Petitioner filed a reply on or about May 15, 2001.  (Dkt. No. 31, Ex. G).

After reviewing these submissions, the state court (Thomas A. Breslin, J.) denied Petitioner's motion. (Dkt. No. 31, Ex. H). First, the court found that the issues raised by Petitioner were based upon matters contained in the record, and Petitioner could therefore have raised them on direct appeal, but did not.  (*Id*. at 1-2).  Noting that a CPL 440 motion is not a substitute for a direct appeal, the court denied the motion.

Second, the court stated that even if it considered Petitioner's claims, they would be denied.  The court explained that first degree robbery, under the subsection to which Petitioner pleaded guilty, required that he display "'what appears to be a pistol . . . or other firearm.'" (*Id*. at 3)(quoting N.Y. PENAL LAW §160.15(4)).  The court noted that the display of a pellet gun "could meet this element."  (*Id*.).  The court rejected Petitioner's claim that the pellet gun was not a real firearm.  The issue, according to the court, was not whether the pellet gun was a firearm, but whether it was "a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." (*Id*)(quoting 160.15(4)).  Since New York courts have ruled

5

that a pellet gun is capable of causing death or other serious physical injury, the court concluded that the affirmative defense that the object was not capable of causing such injury did not apply. (*Id.*).

The court also rejected Petitioner's claim that trial counsel was ineffective.  It noted that Petitioner sought to modify an already favorable plea, and "[t]he fact that counsel did not support this course of action does not require that a new attorney be appointed" because counsel did not advocate against Petitioner or become a witness against him.  (*Id.*).  The court found that Petitioner received meaningful representation. (*Id.* at 3-4).  Application for permission to appeal from the denial of the motion was denied on September 13, 2001. (See Dkt. No. 9, Ex. C, Dkt. No. 1, Amended Pet., Procedural Issues, at p.7).[2]

On October 9, 2001, Petitioner filed his first writ of error coram nobis.  (Dkt. No. 31, Ex. I).  He argued that appellate counsel was ineffective for failing to challenge the validity of the guilty plea and for failing to argue that trial counsel was ineffective.  The prosecutor filed a response on November 1, 2001. (Dkt. No. 31, Ex. J).  Petitioner filed a reply on or about November 13, 2001.  (Dkt. No. 31, Ex. M).  The writ was denied by the Appellate Division, Third Department, on December 7, 2001.  (Dkt. No. 31, Ex. K).

Petitioner filed a second writ of error coram nobis on April 16, 2002.  (Dkt. No. 31, Ex. L).  This time, Petitioner alleged that appellate counsel was ineffective for not

---

[2]        Petitioner asserts that he filed an application for permission to appeal from the denial of the CPL 440 motion on July 10, 2001, and attached a copy of the application to his Motion to Vacate this Court's order dismissing his habeas petition as untimely.  (Dkt. No. 9, Ex. C).  Petitioner claims that leave to appeal was denied by the Appellate Division, Third Department, on September 13, 2001, but does not attach any documentation to support that assertion.  This Court is, therefore, unable to verify these dates.

alleging that Petitioner's plea was based upon false advice given by trial counsel.  The prosecutor did not file a response.  On July 11, 2002, the Appellate Division denied the writ.  (Dkt. No. 31, Ex. N).

**2.      Proceedings in this Court**

Petitioner commenced this action on February 3, 2003.  (Dkt. No. 1).  On February 25, 2003, Petitioner was ordered to file an amended petition that set forth the filing dates of each state court challenge to his conviction so that the court could determine whether the one-year statute of limitations had expired.  (Dkt. No. 3).  On March 20, 2003, Petitioner filed an amended petition.  On April 1, 2003, the amended petition was dismissed as untimely.  (Dkt. No. 6).

On May 5, 2003, Petitioner filed a motion to vacate the April 2003 Decision and Order dismissing his petition.  (Dkt. No. 9).  In the motion, Petitioner explained that he inadvertently omitted information regarding the dates upon which he filed state court challenges to his conviction.  He claimed that he attempted to file a habeas petition in August 2002 but that effort was frustrated by the actions of prison officials.  (Dkt. No. 9, at ¶¶6-16).  Petitioner stated that on January 27, 2003, he received a letter from the Clerk of the court informing him for the first time that the court had no record of a pending habeas petition.  (*Id*. at ¶10).  Petitioner then filed a new habeas petition on February 3, 2003.  (*Id*. at ¶13). Petitioner attached copies of the CPL 440 motion, the writs of error coram nobis, and several documents from the prison in support of his argument that prison officials did not mail his petition as instructed.  (Dkt. No. 9, Exs. A-L).  On May 6, 2003, Petitioner also filed a notice of appeal to the Second Circuit Court of Appeals along with a Request for Certificate of Appealability.  (Dkt. No. 10).

7

On June 2, 2003, after considering Petitioner's motion, the district court gave Petitioner the option of either pursuing his appeal in the Second Circuit Court of Appeals or withdrawing it.  (Dkt. No. 11, Kahn, D.J.). If Petitioner opted to withdraw the appeal, the April 1, 2003 order dismissing the petition would be vacated and the court would permit Petitioner to file an amended petition which included the new information provided in his motion to vacate judgment.  Petitioner was ordered to file the affidavit within twenty days of the date of the order. Petitioner submitted an affidavit on June 23, 2003 in which he advised the court that he requested dismissal of his appeal in the Second Circuit.  (Dkt. No. 12).  On September 10, 2003, the appeal was dismissed without prejudice by the Second Circuit Court of Appeals.  (Dkt. No. 14).

On December 18, 2003, Petitioner's motion to vacate judgment was granted. (Dkt. No. 15).  Petitioner was ordered to file an amended petition containing all information relevant to the state court challenges to his conviction, including the "information concerning his alleged frustrated attempt to file his habeas petition in August 2002," and all claims Petitioner wanted considered, within thirty days of the date of the order (*Id*. at 3-4).

Petitioner filed the amended petition on January 15, 2004, but failed to sign it. (Dkt. No. 19).  On February 5, 2004, Petitioner was ordered to complete an affidavit stating that he filed the amended petition in January 2004 and that the information therein was true and correct no later than thirty days from the date of the order.  (Dkt. No. 20).  Petitioner signed and filed the affidavit on February 25, 2004.  (Dkt. No. 21).

On December 14, 2004, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer and memorandum of law, together

8

with pertinent state court records, in opposition to Petitioner's petition.  (Dkt. Nos. 31-32.  Petitioner filed a Traverse on January 11, 2005. (Dkt. No. 33).

**3.**    **Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on federal *habeas* petitions that begins to run from the latest of several events, including the date on which the challenged state court conviction becomes final, the date upon which an impediment to filing created by State action in violation of the constitution or laws of the United States is lifted, the date on which the asserted constitutional right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, and the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(A) - (D).

The Second Circuit has held that for purposes of 28 U.S.C. § 2244, a state conviction becomes "final" when the time to seek certiorari to the United States Supreme Court has expired, which is ninety days after the date direct review of the case has been completed by the highest court in the state. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied* 534 U.S. 924 (2001); *Williams v. Breslin*, No. 03 CIV. 1848, 2004 WL 242447, at *1 (S.D.N.Y. Feb. 11, 2004). The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "This tolling provision 'excludes time during which properly filed state relief applications are pending' but it does not restart the statute of limitations

9

clock." *Breslin*, 2004 WL 242447, at *2 (*quoting Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000), *cert. denied* 531 U.S. 840 (2000)).

Petitioner's application for leave to appeal his conviction to the New York Court of Appeals was denied on October 26, 2000.  (Dkt. No. 31, Ex. D).  His conviction became final for habeas purposes ninety days later on January 24, 2001. *See* 28 U.S.C. § 2244(d)(1)(A). Petitioner had one year from that date, or until January 24, 2002, to file a federal *habeas* petition.  Petitioner, however, filed several state court challenges to his conviction while the opportunity to seek habeas relief still existed, and those challenges tolled the relevant statute of limitations. 28 U.S.C. § 2244(d)(2).

The statute of limitations ran from January 24, 2001 until February 26, 2001, a period of thirty-three days.  It was tolled from February 26, 2001 to June 13, 2001, a period of 107 days, because Petitioner's CPL 440 motion was pending during that time. (Dkt. No. 31,  Ex. E-H).

The statute of limitations ran from June 13, 2001 to July 11, 2001, a period of twenty-seven days.  On July 11, 2001, Petitioner claims that he filed an application for leave to appeal the denial of the CPL 440 motion, and that leave was denied by the Appellate Division on September 13, 2001.  (Dkt. No. 1, Amend. Pet. at p. 7).  Although Petitioner attached a copy of the leave application to his motion to vacate judgment filed on May 5, 2003 (Dkt. No. 9, Ex. C), a copy was not included with Petitioner's amended petition.  Petitioner never provided this Court with documentation to support his claim that his leave application was denied on September 13, 2001, and this Court is unable to verify that date.  If this Court credits Petitioner's claim, the period from July 11, 2001 to September 13, 2001, sixty-five days, would be tolled.

The statute of limitations ran from September 13, 2001 to October 9, 2001, a period of twenty-six days.  The period from October 9, 2001, to December 7, 2001, fifty-nine days, is tolled because Petitioner's first writ of error coram nobis was pending during that time.  (Dkt. No. 31, Exs. I-K, M).

The statute of limitations ran from December 7, 2001 to April 16, 2002, a period of 130 days.  The period from April 16, 2002 to July 11, 2002, eighty-six days, is tolled because Petitioner's second writ of error coram nobis was pending during that time. (Dkt. No. 31, Exs. L, N).

Up to July 11, 2002, Petitioner had used 281 days of the statute of limitations, giving him until October 3, 2002 to file a timely habeas petition.  In the alternative, if this court credits Petitioner's claim that he sought leave to appeal the denial of his CPL 440 motion, and leave was denied on September 13, 2001, he had used 216 days, giving him until December 7, 2002 to file a timely petition.  Under either scenario, Petitioner's habeas petition is untimely because it was not filed until February 3, 2003.

**4.** **Equitable tolling**

A court may, in certain circumstances, excuse a petitioner's delay in filing a timely motion under the doctrine of equitable tolling. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 1996), *cert. denied* 531 U.S. 840 (2000); *Bellamy v. Fisher*, No. 05 CIV. 2840, 2006 WL 2051038,  at *4 (S.D.N.Y. July 24, 2006).  The doctrine should be used sparingly and only in rare circumstances. *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007).  For equitable tolling to apply, petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way' and prevented timely filing." *Lawrence,* 127 S. Ct. at 1085 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007).  A petitioner claiming extraordinary circumstances must support that claim with evidence and not simply with "personal conclusions or assessments."  *Bellamy*, 2007 WL 2051038,  at *5 (*citing Mendez v. Artuz*, No. 99 CIV. 2472, 2000 WL 991336, at *2 (S.D.N.Y. Jul. 19, 2000) (holding that conclusory allegations do not meet the high burden required to justify tolling).  A petitioner must also show that he was unable to pursue his legal rights during the entire period that he seeks to toll.  *Barbosa v. United States*, No. 01 CIV. 7522, 2002 WL 869553, at *5 (S.D.N.Y. May 3, 2002).

Petitioner argues that the time period from August 27, 2002 through January 27, 2003, should be equitably tolled because his habeas petition was either lost or otherwise improperly handled by the correctional facility officials after he gave it to them to be mailed, and the subsequent untimely petition was caused by these external forces beyond his control and not by a lack of due diligence.

In support of this claim, Petitioner asserts that he attempted to mail the petition on August 23, 2002, but it was returned to him by prison officials because he did not provide proof that it had to be posted by certified mail. (Amend. Pet., Procedural Issues, at p. 7; Dkt. No. 9, Ex. F, Disbursement or Refund Request, 8/23/02, addressed to James F. Hanley Federal Building, 100 S. Clinton Street, P.O. Box 7198, Syracuse, NY 13261, Disbursement Return Form; Ex. G, Upstate Correctional Facility Legal Mail Log, 8/24/02).

Petitioner claims he again attempted to mail the petition on August 26, 2002, but

it was returned to him for insufficient postage.  (Amend. Pet. at p. 7; Dkt. No. 9, Ex. H,

Upstate Correctional Facility Legal Mail Log, 8/26/02).  On August 27, 2002, Petitioner

alleges that he finally mailed the petition, "this time using a combination of personal

stamps and facility free postage."  (Amend. Pet. at p. 7; Dkt. No. 9, Ex. I, Mail Room

Correspondence letter).  The petition was not returned to him after August 27, 2002,

and Petitioner apparently assumed it had been filed in this court.  (Amend. Pet.,

Summary of Facts, at 8).

Petitioner claims that on September 3, 2002, he wrote a letter to the Clerk of this

court inquiring on the status of the petition, but that he received no response.  (*Id*.).  On

January 21, 2003, Petitioner wrote to the court to request the assignment of counsel on

his habeas petition. (Dkt. No. 9, Ex. J).  On January 27, 2003, Petitioner received a

letter informing him for the first time that there was no record of his habeas petition

having been filed.  (*Id*. at 7-8; Dkt. No. 9, Ex. J). Petitioner then filed the pending

petition on February 3, 2003.

Under this scenario, Petitioner's petition would be timely.  The statute of

limitations would have run from July 11, 2002 to August 27, 2002, a total of forty-seven

days, and then would be tolled between August 27, 2002 and January 27, 2003, a

period of 153 days.  The statute of limitations would have resumed running on January

27, 2003, leaving Petitioner with 102 days left during which to file a timely petition.


First, this court must determine if Petitioner's allegations constitute extraordinary

circumstances. The Second Circuit has held that the "intentional confiscation of a

prisoner's habeas corpus petition and related legal papers by a corrections officer is

13

'extraordinary' as a matter of law." *Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000).  Extraordinary circumstances have also been found where a court refused to accept a petition for filing based upon a technical deficiency in a cover sheet, and then lost the petition (*Corjasso v. Ayers*, 278 F.3d 874, 878 (9th Cir. 2002)), and where prison officials failed to follow a petitioner's request to draw a filing fee for the petition from his trust account and mail it with the petition for filing (*Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).  In each of these circumstances, the actions of others directly resulted in the untimely filing.  In this case, while Petitioner's claim could be read to include an allegation of intentional interference by prison officials, there is nothing in the record to support that allegation.

Essentially, Petitioner's claim is that the petition was lost.  The negligent loss of legal papers, however, has been held insufficient to warrant equitable tolling. *See Cross v. McGinnis,* No. 05 Civ. 504, 2006 WL 1788955, at *5 (S.D.N.Y. Jun. 28, 2006)(claim that legal papers confiscated as a condition of solitary confinement were later lost insufficient to warrant equitable tolling); *Cox v. Edwards*, No. 02 Civ. 7067, 2003 WL 22221059, at *3 (S.D.N.Y. Sept. 26, 2003)(claim that legal papers lost by inmates or correctional facility personnel insufficient to entitle petitioner to equitable tolling); *Agramonte v. Walsh*, No. 00 Civ. 892, 2002 WL 1364086 at *1 (E.D.N.Y. June 20, 2002) (a negligent loss of legal papers does not entitle petitioner to equitable tolling).  But Petitioner's claim is not that general legal papers, such as trial transcripts or voir dire minutes, were lost.  See, e.g., *Cross,* 2006 WL 1788955, at *5.  Rather, he asserts that the habeas petition ***itself*** was lost after it was given to prison officials.

14

Moreover, Petitioner's claim is not simply a bald accusation. He has presented evidence to support his claim. Petitioner attached a Disbursement or Refund Request Form, dated August 23, 2002, for the amount of $1.52, to pay for postage on a piece of mail correctly addressed to this court. (Dkt. No. 9, Ex. F).  He also presented evidence that a second piece of mail, also for the postage amount of $1.52, was sent from his account during the week of August 26 to August 30, 2002, the week during which Petitioner alleges that he finally mailed the habeas petition.  (Dkt. No. 9, Ex. I).  Further, the loss of the petition occurred shortly before the statute of limitations would have run. *See*, *e.g.*, *Valverde,* 224 F.3d at 133 (confiscation of petition "shortly before the filing deadline may justify equitable tolling and permit the filing of a petition after the statute of limitations ordinarily would have run."); *Agramonte*, 2002 WL 1364086 at *1 (no equitable tolling where Petitioner failed to show the loss of legal papers occurred "shortly before the end of the one year" statute of limitations).

Assuming that Petitioner has shown extraordinary circumstances, the court must still determine if those circumstances prevented Petitioner, acting with due diligence, from filing a petition on time.  *Valverde*, 224 F.3d at 134.  Here, Petitioner had until October 3, 2002, or December 7, 2002 (if the court credits his claims surrounding an appeal from the denial of his CPL 440 motion) to file his petition.

The record suggests that Petitioner believed his petition was filed in August 2002, well before either deadline.  He presented evidence that in September 2002, he wrote to the court requesting the status of his petition. (Amend. Pet. at p. 8).  On January 21, 2003, Petitioner again wrote to the court requesting the status of his petition. In that letter, Petitioner explained that the court had not responded to his

15

earlier inquiry about whether his petition had been received. (Dkt. No. 9, Ex. J).[3]  He further requested that this court appoint counsel to represent him. (*Id.*). These actions are consistent with the belief that the petition had been sent to the court and filed on August 27, 2002.  Further, upon learning that the August petition had not been received or filed, Petitioner immediately filed a new petition within seven days, demonstrating due diligence. *Compare Cross*, 2006 WL 1788955, at *5 (petitioner alleging lost papers prevented him from filing a habeas petition on time did not act with due diligence where he waited years after the loss to file a petition); *Agramonte*, 2002 WL 1364086, at *1 (no due diligence where petitioner did not file a habeas petition until "four years and three months after his papers were allegedly lost.").  Under these circumstances, the court finds that Petitioner has demonstrated diligent pursuit of his claims and extraordinary circumstances beyond his control that prevented his habeas petition from being timely filed between August 27, 2002 and January 27, 2003.  The Court will therefore equitably toll this time period, 153 days, and find his current petition timely.

## *5.*   Standard of Review

The standard of review in a habeas action depends upon whether the state court considered petitioner's constitutional claims "on the merits." The Antiterrorism and

---

[3]      In the letter to this Court dated January 21, 2003, and in a letter to the Inspector General dated January 29, 2003, Petitioner alleges that he filed the habeas petition on or about September 24, 2002. (Dkt. No. 9, Ex. J, K).  In a letter to Glenn S. Goord dated February 27, 2003, Petitioner alleges the petition was filed on August 24, 2003. (*Id.* at Ex. K). The August 24, 2003 date also appears in a letter to the Department of Security at Upstate Correctional Facility dated March 3, 2003. (*Id.*). Since Petitioner's current petition and his motion to vacate judgment both list August 27, 2002 as the last date Petitioner attempted to mail his petition, and the majority of the records to which Petitioner cites in support of his current argument refer to that date, this Court will liberally construe the submissions and use August 27, 2002 as the date upon which Petitioner attempted to mail his petition. *See Chang v. United States*, 250 F.3d 79, 86 n. 2 (2d Cir. 2001)(pro se habeas petition should be liberally construed).

16

Effective Death Penalty Act of 1996 (AEDPA) provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the state court ruling on the merits of a federal constitutional issue was either " 'contrary to ... clearly established Federal law' or 'involved an unreasonable application ... of clearly established Federal law." ' *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001)(*quoting* 28 U.S.C. § 2254(d)(1))(alterations in original), *cert. denied*, 534 U.S. 886 (2001). "Clearly established federal law," as defined by the Supreme Court, refers to the Court's holdings as of the time of the relevant state court decision. *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000), *cert. denied,* 537 U.S. 909 (2002)).  The statute further provides that the court may grant a writ of habeas corpus when a claim that was considered on the merits by the state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A state court's decision is contrary to federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams,* 529 U.S. at 413. A state court unreasonably applies clearly established federal law when the correct principle is identified, but the state court unreasonably applies that principle to the facts of the petitioner's case.  *Lockyer,* 538 U.S. at 75, *Williams*, 529 U.S. at 413.

Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact.

17

*Thompson v. Keohane*, 516 U.S. 99, 107-13 (1995). When presented with these questions, the court was empowered to conduct an independent review of the record. *Id.* The factual findings of the state court, however, were presumed to be correct absent circumstances listed in the statute, such as cases in which the factual finding was not fairly supported by the record. 28 U.S.C. § 2254(d) & (d)(8). The AEDPA requires the court to apply a more deferential standard, placing new restrictions on the power of federal courts to grant writs of habeas corpus to state inmates. *Williams,* 529 U.S. at 399.

In order to apply the AEDPA standard, the petitioner's claim must have been "adjudicated on the merits" in the State court proceedings. 28 U.S.C. § 2254(d)(1). Additionally, the AEDPA provides that a state court's fact findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. Id. § 2254(e)(1). If the State court has failed to adjudicate a claim "on the merits", the pre-AEDPA standard of review applies, and the court reviews both questions of law and mixed questions of law and fact de novo.  *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

6.    **Guilty Plea based on Faulty Information**

Petitioner first alleges that his guilty plea was not knowing, voluntary and intelligent because it was based upon false information provided by trial counsel. Specifically, Petitioner claims that counsel told him that if he pleaded guilty to one count of first degree robbery, the plea would satisfy all nine counts of the indictment. Petitioner claims that he subsequently learned that he was charged in only six of the

nine counts, and he would not have pleaded guilty had he been correctly informed. Respondent argues that this claim is without merit.  (Dkt. No. 32, at 21-26).

## A.    Exhaustion

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless there is an "absence of available state court corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in the state court prior to raising them in a habeas petition.  Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the state court.  *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)(*quoting Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A claim is deemed exhausted when no real avenue remains by which it could be raised.  *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)(*citing Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied* 514 U.S. 1054 (1995).

Petitioner did not present this claim to the state courts on direct appeal, in his *pro se* motion to vacate his conviction, or in his first *pro se* writ of error coram nobis.  (*See* Dkt. No. 31, Exs. B, E, I). While Petitioner raised this claim in his second coram nobis petition, and analyzed it at length, he did so in the context of his complaint that appellate counsel was ineffective for not raising this claim on direct appeal.  (See Dkt. No. 31, Ex. L). It was never presented to the state courts as a separate and

19

independent claim.

Petitioner cannot now raise this claim in a second direct appeal or in a second motion to vacate conviction under CPL 440.10 because New York law prohibits collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal.  N.Y. CRIM. PROC. LAW § 440.10 (2)(c).  New York law also allows a court to deny a motion to vacate conviction where a defendant has made a previous motion and was in a position to raise the claim but did not.  CPL 440.10(3)(c).  Since no remaining avenue exists in which petitioner could raise this claim, it is deemed exhausted but procedurally defaulted.  *Aparicio*, 269 F.3d at 90; *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).

This Court may review the procedurally barred claim only if Petitioner demonstrates both cause for the default and actual prejudice resulting from the alleged violation of federal law, *Coleman v. Thompson,* 501 U.S. 722, 748-750 (1991), or establish that failure of the court to consider the claim will result in a miscarriage of justice.  *Id.* at 748.  A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  When a petitioner has failed to establish adequate cause for his procedural default, the court need not determine whether he suffered prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-cv-0461, 2006 WL 1977435 at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.).

Petitioner claims that appellate counsel was ineffective for failing to raise this claim on direct appeal (Dkt. No. 1, Ground One; Dkt. No. 33, Traverse, at Point Three). The ineffectiveness of counsel in not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Aparicio,* 269 F.3d at 91.  As discussed below, however, petitioner's claim that appellate counsel was ineffective is without merit (*See* Point II (E),  *infra*).  Because the claim that appellate counsel was ineffective is meritless, it may not serve as "cause" for a procedural default.  *Aparicio*, 269 F.3d at 91-92.  Further, Petitioner has not presented any new evidence that he is "actually innocent" of the crime for which he was convicted.  *See Schulp v. Delo,* 513 U.S. 298, 327 (1995).  Accordingly, the procedural default bars federal review of Petitioner's claim, and it should be dismissed. Even if this claim was not procedurally barred, it is without merit.

**B.    Voluntariness of the Plea**

The standard governing the acceptance of guilty pleas is well-established.  "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31(1970)); *see also Parke v. Raley*, 506 U.S. 20, 28-29 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969) (United States Constitution requires that guilty

21

plea be intelligently and voluntarily entered).  A knowing plea is entered "'with understanding of the nature of the charge and the consequences of the plea.'" *Santobello v. New York*, 404 U.S. 257, 261 n.1 (1971) (quoting Fed. R. Crim. P. 11); *see Martinez v. Costello*, No. 03 CIV 2763, 2004 WL 26306, at *5 (S.D.N.Y. Jan. 5, 2004) (citing *Santobello* and Rule 11); *see also Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006).

To establish that a criminal defendant's guilty plea was knowing, intelligent and voluntary, the court must find, based upon the record of the relevant plea proceedings, that he or she 1) was competent to proceed, and was fully aware of the nature of the charges faced; 2) had a rational and factual understanding of the proceedings; and 3) was cognizant of the constitutional protections relinquished upon entry of the plea. *Oyague v. Artuz*, 393 F.3d 99, 106 (2d Cir. 2004); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir. 1986), *cert. dismissed* 479 U.S. 805 (1986).  While "the question of whether a plea of guilty has been entered voluntarily within the meaning of the Constitution is often a complex one that involves mixed questions of law and fact[,]" the ultimate issue of whether a plea represents an effective waiver of federal Constitutional rights is controlled by federal law.  *Oyague*, 393 F.3d at 104.

Petitioner insists that his plea was involuntary because counsel told him he would face trial on all nine counts of the indictment, rather than the six counts with which he was actually charged.  The record shows that Petitioner understood that his plea to a single count of robbery would satisfy that indictment, which included two additional attempted first degree robberies.  (Plea Tr. at 26).  Had Petitioner been

22

convicted of first degree robbery and both counts of attempted first degree robbery after a trial, he faced the possibility of a lengthy consecutive prison sentence, since each robbery was a separate and distinct event.  By pleading guilty, he also avoided the possibility of an additional consecutive sentence on the forgery indictment. *See Palacios v. Burge*, 470 F. Supp. 2d 215, 224 (E.D.N.Y. 2007)("consecutive sentences are permissible where the People demonstrate that the offenses are based on separate and distinct acts.")(quoting *People v. Parks*, 95 N.Y.2d 811, 815 n. 2, 712 N.Y.S.2d 429, 734 N.E.2d 741 (2000)). Given the extremely favorable plea agreement, Petitioner's claim that he would have rejected it had he known he only faced trial on six counts of the indictment is meritless.

Moreover, the record shows that the trial court clearly indicated which counts of the indictment would be satisfied by Petitioner's plea.  During the plea proceedings, petitioner admitted the relevant facts in pleading guilty to the first count of the indictment.  (Plea Tr. 21-22).  The court then asked Petitioner if he was involved in the two attempted robberies that took place on January 30, 1997 (count two of the indictment), and February 1, 1997 (count three of the indictment).  Petitioner admitted his involvement in those crimes.  (*Id*. at 22-24).  Petitioner also acknowledged that he was involved with the possession of weapons found at 145 Jay Street, charged in counts seven and eight of the indictment (Plea Tr. at 23-24).  While the court did not specifically mention count nine, charging Petitioner with fifth degree possession of stolen property, the judge informed Petitioner that his plea was in satisfaction of the entire indictment with which he was charged, and that his plea also satisfied an unrelated forgery indictment.  (Plea Tr. at 26).

23

Finally, the plea colloquy shows that the trial court made a thorough inquiry to determine whether Petitioner's guilty plea was knowing, voluntary and intelligent. In fact, the plea transcript shows that the trial court was initially unconvinced that Petitioner's plea was voluntary, and the judge refused to accept it. Petitioner began by assuring the court that he was thinking clearly and that he had not taken medication, drugs or alcohol before coming to court. (Plea Tr. at 4-5). Petitioner told the court that he understood the rights that he was giving up by pleading guilty. (*Id*. at 6-8). He assured the court that no one threatened or forced him to plead guilty, and that he was pleading guilty because he was, in fact, guilty. (*Id*. at 8-9). Petitioner admitted that he and his co-defendant approached two women, that Petitioner "pulled out a handgun," that his co-defendant checked the victims for money, and that they gave the victims back their money because it was such a small amount. (*Id*. at 13-14). He then claimed that the gun was not a firearm but was, instead, a pellet gun. (*Id*. at 14). The court stated that the victims testified at grand jury that Petitioner and his co-defendant threatened to kill the victims if they called police. Petitioner denied doing so, and the court stated it was not satisfied with the allocution. When the court told Petitioner he could proceed with a hearing and trial, Petitioner then admitted that he and his co-defendant *had* threatened to kill the victims. (*Id*. at 15). Based upon these inconsistencies, the court refused to accept the plea.

After a short recess, Petitioner again expressed a desire to plead guilty. Defense counsel conceded that Petitioner had not initially been sincere. (Plea Tr. at 16). Once again, Petitioner assured the court that he understood he did not have to

plead guilty, and that he had fully discussed the plea bargain with his mother and his attorney.  (*Id*. at 18). He again indicated that he understood the rights he was giving up by pleading guilty.  (*Id*. at 18-20). Petitioner told the court that no one threatened or forced him to enter the plea, that it was the product of his free and voluntary choice, and that he was pleading guilty because he was, in fact, guilty.  (*Id*. at 20). Petitioner then explained that he committed the robbery with his co-defendant, that Petitioner had the gun, that he put the gun up to the victims' faces, and that the co-defendant searched their pockets and took money from them.  (*Id*. at 21-22).

The court told Petitioner that if he had any "hesitancy about pleading guilty today, I'm going to beg you not to plead guilty."  (*Id*. at 25).  The judge warned Petitioner that the plea was a "final and drastic step."  (*Id*.).  The judge also warned Petitioner that if he came back at sentencing, claiming that his plea was a mistake, the court would not allow him to withdraw his plea.  (*Id*. at 25).  Petitioner assured the court that he wanted to plead guilty, and did so.  (*Id*.).  The record establishes that Petitioner's guilty plea was knowing, voluntary and intelligent, and the petition on this ground should be **denied**.

## C.   Counsel's advice

To the extent that Petitioner claims that trial counsel was ineffective for not providing him with accurate information, that claim is deemed exhausted but procedurally barred.  This claim was also not presented to the state courts as an independent claim, but, rather, as a basis to support his claim that appellate counsel was ineffective, and no avenue exists in which Petitioner could present this claim to the

state courts.  *Aparicio*, 269 F.3d at 90; *Spence*, 219 F.2d at 170.  Although Petitioner claims appellate counsel was ineffective for not raising this claim on direct appeal, that claim is without merit, as discussed below.  This claim should also be dismissed as procedurally barred.

Even if this claim was not procedurally barred, it is without merit.  The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both: (1) that counsel's representation fell below an objective standard of reasonableness, measured in the light of prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 674, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*.).[4] In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and would instead have gone to trial.  *Hill,* 474 U.S. at 59; *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996), *cert. denied* 517 U.S. 1147 (1996); *Baker v. Murray*, 460 F. Supp. 2d 425, 434 (W.D.N.Y. 2006); *Padilla v. Keane*, 331 F. Supp. 2d 209, 215

---

[4]        In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as "clearly established Federal law [.]" *Williams*, 529 U.S. 362, 391 (2000).

(S.D.N.Y. 2004).

To gauge whether a petitioner would have opted to have a trial if counsel gave him more information, courts should consider whether the record supports the finding that the plea was knowing, voluntary and intelligent. *Padilla*, 331 F. Supp. 2d at 216. If the record supports that finding, a guilty plea will not be rendered invalid because the petitioner had to choose between pleading guilty or facing trial on more serious charges. *Id.* Where counsel negotiates a favorable plea agreement, "no prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial." *Id.* at 216 (quoting *Feliz v. U.S.*, No. 01 cv 5544, 00 CR 53, 2002 WL 1964347 at *7 (S.D.N.Y. Aug. 22, 2002).

Here, a review of the record shows that Petitioner received effective assistance. He has not shown a reasonable probability that, but for counsel's alleged error, the six counts of the indictment and the separate forgery indictment would have been disposed of more favorably than they were. Counsel negotiated a plea agreement that disposed of five out of six charges pending against Petitioner in one indictment, and secured the dismissal of the forgery indictment, thus eliminating the threat of consecutive prison terms if convicted on those charges. *See Padilla*, 331 F. Supp. 2d at 216. Petitioner's apparent claim that he was sixteen years old at the time of his arrest and too young to fully understand the charges against him is also refuted by the record. This was not Petitioner's first arrest. In fact, he was serving a shock probation sentence on another charge at the time of his plea. (P. 16-17, 26). This claim should be ***denied***.

*7.*   **Factual Basis for the Guilty Plea**

Petitioner claims in Ground Three of his petition that the trial court should not have accepted his guilty plea because there was no factual basis for it.  Specifically, he claims that during the plea colloquy, he informed the court that he possessed a "pellet" gun during the robbery, putting the trial court on notice that he did not possess an actual firearm.  Petitioner claims that his statements raised the possibility of an affirmative defense to the first degree robbery charge, and the trial court did not perform "its obligatory duty" to ensure that Petitioner was aware of the defense and was knowingly and voluntarily waiving it by pleading guilty.

**A.**   **Procedural Bar**

Petitioner raised this claim in his CPL 440 motion.  (Dkt. No. 31, Ex. E).  The state court rejected it because Petitioner could have raised this claim on direct appeal because it could be decided "by an examination of the record," but did not. (Dkt. No. 31, Ex. H, at 2).  The court also stated that a "postjudgment [sic] motion is not a substitute for an appeal nor a vehicle to obtain an additional appeal."  The trial court did not explicitly cite to Section 440.10(2)(c), which requires a court to deny a post-conviction motion where, petitioner attempts to raise a claim in his motion to vacate that he could have raised on appeal, but unjustifiably failed to do so. *See* N.Y. Crim. Proc. Law §440.10(2)(c).  The language the court used to reject this claim, however, clearly implies the use of this procedural bar. The denial of a claim under Criminal Procedure Law 440.10(2)(c) rests upon an independent and adequate state ground and federal review of the claim is barred.  *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.

1993), *cert denied* 510 U.S. 1078 (1994); *Heron v. Coughlin*, No. 94-CV-1860, 2003 WL 21921267 at *2 (S.D.N.Y. 2003); *Morales v. Sabourin*, No. 00 Civ. 8773, 2002 WL 32375006 at *12 (S.D.N.Y. 2002). That the state court also addressed the merits of the claim does not change that result. *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 810 n. 4 (2d Cir. 2000); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996), *cert. denied* 520 U.S. 1108 (1997).

This Court may review the procedurally barred claim only if Petitioner demonstrates cause for the default and resulting prejudice, or that the failure of the federal court to review the claim will result in a "fundamental miscarriage of justice" i.e., that the petitioner is innocent. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Coleman,* 501 U.S. at 748-750.

As with his previous claims, Petitioner argues that this claim was not raised on direct appeal because appellate counsel was ineffective. As noted above, the ineffectiveness of counsel for not raising or preserving a claim in state court will be sufficient to show cause for a procedural default only when counsel was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards,* 529 U.S. at 451; *Aparicio,* 269 F.3d at 91. Because Petitioner's claim that appellate counsel was ineffective is without merit, it may not serve as "cause" for a procedural default. *Aparicio,* 269 F.3d at 91-92. Accordingly, the procedural default bars federal review of this claim.

## B.     The Merits

The Second Circuit has explained that there is a distinction, for due process

purposes, between the elements of the crime to which a defendant pleads guilty and an affirmative defense to that crime.  *Ames v. New York State Div. of Parole*, 772 F.2d 13, 15 (2d Cir. 1985), *cert. denied* 475 U.S. 1066 (1986); *Mitchell v. Scully*, 746 F.2d 951, 956 (2d Cir. 1984), *cert. denied* 470 U.S. 1056 (1985). *See also Anaya v. Brown*, No. 05-Civ. 8974, 2006 WL 2524079, at *10 (S.D.N.Y. Sept. 1, 2006 (quoting *Ames*, 772 F.2d at 15). In *Ames* and *Mitchell*, each petitioner pleaded guilty to first degree robbery. Like Petitioner, they sought habeas relief on the ground that their pleas were involuntary because the respective trial courts did not inform them of the affirmative defense found in Penal Law Section 160.15(4).  Pursuant to Penal Law Section 160.15(4), it is an affirmative defense to first degree robbery if the firearm at issue "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged."  (N.Y. PENAL LAW § 160.15(4).

The Second Circuit ruled that Ames's and Mitchell's pleas were not involuntary because the indictments gave each petitioner "clear notice of the elements of first degree robbery."  *Ames*, 772 F.2d at 15 (citing *Mitchell*, 746 F.2d at 956-57).  Even assuming that each petitioner was not informed of the affirmative defense contained in Section 160.15(4), that fact did not render their pleas involuntary because "[D]ue process does not require that a defendant be advised of every basis on which he might escape or receive a lesser punishment for an offense than he has committed [particularly where] the burden of persuasion with respect to the appropriate defense rests on the defendant."  *Ames*, 772 F.2d at 15 (quoting *Mitchell*, 746 F.2d at 956-57).

The same is true here.  The indictment gave Petitioner clear notice of the

elements of first degree robbery under Section 160.15(4). As the trial court explained, to sustain a conviction for first degree robbery under that subsection, there must be evidence that Petitioner forcibly stole property and during the commission of the crime or in flight therefrom, Petitioner displayed "what appeared to be a pistol . . . or other firearm." (Dkt. No. 31, Ex. H, at 3)(quoting N.Y. PENAL LAW § 160.15(4)). The indictment alleged that Petitioner and his co-defendant forcibly stole money from two victims, "threatened immediate use of physical force . . . and during the course of the commission of the crime he [Petitioner] or another participant . . . displayed what appeared to be a handgun." (Dkt. No. 31, Ex. A, R-3). Petitioner admitted that he and his co-defendant approached the victims, threatened them with a gun, went through their pockets and took money from them. (*Id*. at 22). There was no discrepancy between the crime to which Petitioner pleaded guilty and his admitted conduct. *See Ames*, 772 F.2d at 15.

Petitioner insists that he could not be guilty of first degree robbery because the object used was not a firearm but was, rather, a pellet gun. As the trial court concluded, however, Petitioner's admitted display of what ***appeared*** to be a handgun was sufficient to establish a necessary element of first degree robbery under Section 160.15(4). Since the plea colloquy established the necessary factual predicate of first degree robbery, petitioner's claim is meritless.

**8.**    <u>**Appellate Counsel Effectiveness**</u>

Petitioner claims that appellate counsel was ineffective because he failed to raise on direct appeal the two claims Petitioner now raises in his habeas petition: (1) that

Petitioner's plea was based upon false information, and (2) that his plea was invalid because he was not informed by the trial court of a possible affirmative defense.

Petitioner challenged the effectiveness of appellate counsel in two separate coram nobis petitions.  In the first, Petitioner alleged appellate counsel was ineffective for not challenging the effectiveness of trial counsel, and for not arguing on direct appeal that the trial court should not have accepted his plea without informing him of a possible affirmative defense.  (Dkt. No. 31, Ex. I).  In the second, Petitioner claimed appellate counsel should have argued on direct appeal that trial counsel was ineffective for giving Petitioner false information that induced his plea.  (Dkt. No. 31, Ex. L).  Since the Appellate Division considered each of these claims and rejected them (Dkt. No. 31, Exs. K, N), they are deemed exhausted and the deferential AEDPA standard of review applies. *Sellan v. Kuhlman,* 261 F.3d 303, 314 (2d Cir. 2001) (ineffective assistance of counsel claim deemed adjudicated on the merits where Appellate Division denied petitioner's writ of coram nobis and there was no basis to conclude that the claim was rejected on non-substantive grounds).

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that (I) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different, *i.e.*, the error caused prejudice to the petitioner.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Strickland*, 466 U.S. at 688, 694.  When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.

32

1994), *cert. denied* 513 U.S. 820 (1994).  A petitioner must show more than counsel's failure to raise a non-frivolous argument, as counsel is required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument urged by the petitioner. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Sellan,* 261 F.3d at 317.  Moreover, the Sixth Amendment does not require that all colorable state law arguments be raised on direct appeal.  *Id.* at 310.

Analyzed under these standards, the record fully supports the Appellate Division's rejection of petitioner's claims that appellate counsel was ineffective. Appellate counsel filed a brief in which he advanced the claim he believed had the greatest chance of success, and put together a nineteen-page appendix in support of that claim.  (Dkt. No. 31, Exh. A).  Counsel likely recognized that there was no merit to the claims Petitioner now insists he should have raised. Appellate counsel acted reasonably in not raising these issues, and Petitioner's claim that appellate counsel was ineffective should be denied.  *Evitts*, 469 U.S. at 394; *Jones*, 463 U.S. at 751-52.


**WHEREFORE**, based upon the findings above, it is

**RECOMMENDED**, **that the petition for a writ of habeas corpus (Dkt. No. 19) be DENIED and DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e);

*Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human*

*Servs.*, 892 F.2d 15 (2d Cir.1989)).

Dated: March 3, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge